In re Enrique Castro Martínez, Defendant.

No. 7.   Argued July 20, 1937.—Decided July 31, 1937.

C. Iriarte, F. Fernández Cuyar, and Héctor González Blanes for defendant; R. A. Gómez, Prosecuting Attorney.

Judgment of the Supreme Court rendered at the instance of its Mr. Chief Justice Del Toro.

This is a proceeding for contempt of this Supreme Court instituted upon a complaint on the 12th of this instant month of July by the Prosecuting Attorney. The defendant was served with a copy of the complaint, and on July 20th, the day set for the hearing, he filed his written answer. At the hearing the Prosecuting Attorney appeared and also the defendant in person and his attorneys. The evidence offered by the Prosecuting Attorney and by the respondent was taken down by a stenographer who transcribed and certified the same and it was made part of the record on July 21. On July 23 the defendant filed his brief arguing the facts and the law, and on July 28 the Prosecuting Attorney filed his brief, the case being thus definitely submitted ·for the consideration and decision of the Court.

It is an established fact that on June 21 last this Court held a sitting to· hear · among other matters a motion for the annulment ·of the preliminary ·writ· of injunction

issued in aid of its jurisdiction in the appeal No. 7550 taken in the case of *Las Monjas Racing Corporation* v. *Arandes* and *Grovas, Fausto E. Arandes* and *Francisco Grovas,* an injunction case, coming from the District Court of San Juan.

The attorney for the defendants and appellants during the hearing of the said motion was Attorney Juan Valldejuli Rodríguez who, in the course of his oral argument made a strong attack on the conduct followed in the case by the Judge of the District Court and made insinuations as to the effects of the intervention of Attorney Celestino Iriarte as attorney in said case. Mr. Iriarte, who appeared as one of the attorneys of the plaintiff and appellee defended the conduct of the district judge and answered the insinuations made against him. The Court did not intervene with the attorneys in their arguments, on its own initiative, nor was it requested to do so;

Amongst the persons who were present at the hearing at the place assigned to the public in the court room, there was the defendant Enrique Castro Martínez, who heard the argument of the Attorney Mr. Valldejuli;

After the hearing of the motion had concluded, an attorney was sworn in and the Court adjourned, at about 5 o'clock in the afternoon. The members of the Court retired to the conference room contiguous to the courtroom and several minutes afterwards there appeared before them Attorney Valldejuli to inform them of the fact that he had just been assaulted by the defendant.

It is a fact that the respondent, who was standing with other persons at the western end of the hall on the floor of the Insular Capitol where the court is located and which hall separates the offices of the Secretary and of the Marshal from the courtroom, upon seeing Attorney Mr. Valldejuli come out from the office of the Marshal and go down some steps which are in the said hall, walked towards him and when the attorney had just passed the line of an iron fence

constructed within the said hall, which also has an iron door, assaulted and battered him with the fists uttering at the same time offensive words against him and told him that he was stricking him so that he would not talk against Judge Llauger, who is the district judge whose conduct the attorney had criticized in his oral argument; the assault was witnessed and the insults heard totally or partially by several persons among whom there were certain attorneys and court employees, this Court having held a conference immediately and taken the necessary steps for an investigation of the facts.

From the foregoing it is clear that the assault was made not only against an attorney who had just addressed the Court in a judicial matter entrusted to his defense, but also as the result of his address and as a punishment for the same, within the court building and while the judges were assembled in the conference room.

The contempt to the Court is therefore manifest. The disturbance of the peace tending directly to interrupt the quiet consideration of the judicial matter which had been sumitted to the decision of the Court, and the unlawful and violent attack upon the person of an officer of this Court, within or at least in the inner threshold of its premises, as the result of his duties, are clear. And the Court possesses under the law as well as inherently the power and the duty to punish it. Section 145 of the Penal Code. Section 7 of the Code of Civil Procedure, 13 C. J. 46.

The defendant admits the assault and the place where the same took place, but maintains that as the session of the court had already ended and as the facts did not occur in the presence of the court, nor could be heard by its judges, there was no contempt. He also claims that the statements made by Attorney Valldejuli in his argument were not made in the discharge of his duties and that the cause of the as-

sault was not the address but was due to previous quarrels between him and the attorney.

Accepting the existence of previous quarrels, very old indeed, according to the evidence of the defendant himself, since it so clearly and vividly appears, in our judgment, from the evidence of the Fiscal and from that of the respondent himself that the assault was the immediate result of the oral argument, the previous quarrels tend to explain better the conduct of the respondent. His state of mind was such as to encourage the action he took.

As to the contention that the attorney in his argument forgot his duties to such an extent that his statements must be considered as beyond those which could be made within a strict compliance with his duty, it will be sufficient to say that the courts exist precisely for the purpose of rendering justice, and that if the attorney violated his duties the attention of the Court should have been called in order that it should censure or punish his conduct, and the defendant should not have taken the law into his own hands. To act in such manner is to disturb the social order in its most fundamental basis.

Regarding the contention that the session of the court had already terminated and that the assault took place beyond the railing which marks the exact entrance to the court, and that the latter did not see the assault, nor heard the words uttered by the defendant it will suffice to say that weighing together all the attendant circumstances the conclusion is unavoidable that the contempt was committed, which contempt it is known may be direct or constructive. 13 C. J. 5.

In the brief of the Prosecuting Attorney there are cited numerous decisions of the courts of the continental United States, which strongly support the complaint herein and the conclusions which this court has reached in this instant case as to the existence of the contempt and the necessity for its punishment. We will only refer to two of them, namely:

*U. S.* v. *Barret,* 187 Fed. 378 and *Ex parte McLeod,* 120 Fed. 130.

In the former, Judge Speer who presided over the court against which the contempt was committed as the result of the assault of an attorney who had just addressed the same, expressed himself as follows:

"I am frank to say that I was very much shocked by this incident. Our courts in this district have been for so many years conducted with such decorum and decency that the occurrences of yesterday were abnormal, and distressing to the presiding judge, exceedingly so. On reflection, counsel, and the public generally, will see how true and justifiable is such emotion in the breast of a judge who is anxious to do his duty; and surely I can claim that much for myself.

"It is a constitutional privilege of parties to have counsel. In a criminal case no man can be convicted without the benefit of counsel. He therefore cannot be guilty, in view of the Constitution, until he has had the benefit of counsel. He has an equal constitutional right to the benefit of counsel in a civil case, not expressly, but by implication. It is a right which has come down to us from a time whereof the memory of man runneth not to the contrary. This right has created the noble profession of the law, and, while there are those who through motives of temporary resentment, or otherwise, occasionally impugn the usefulness of the profession, if we look at the halls of Congress, the rosters of our citizen soldiery, and the records of the achievements of our country on all lines, it will be seen, and clearly seen, that the profession of the law has certainly not been surpassed by any other in its devotion to the best interests of civilization. Now, all of this being true, the occupation of counsel must be uninterfered with by violence. He has the right to argue his client's case. If he violates the proprieties of the courtroom, and the attention of the court is called to it, he will be immediately stopped. If he is guilty of impertinent defamation, the courts are open by due process of law to the party defamed in order to recover righteous damages, and there would be no difficulty in maintaining such a case. It is not within the proper power of the parties to the litigation to take the law into their own hands, and assault the counsel when they have been offended or imagine the they have been offended. The counsel in a case is a minister of justice. He is the counselor of the court. Without his aid the court cannot get along.

Can it be possible, then, in our country, that the court must regard as trivial an unprovoked assault upon counsel, who has done his duty as he saw it, upon a controversy which necessarily involved the question of the veracity of the contending parties, to deny him the right in a general way to insist that his client was truthful and that the other side was not truthful. This would be to deny the plaintiff his day in court, and to deny him due process of law. If the attorney was offensive, or if the party thought he was offensive, the means of redress is not by resorting to violence, but by appealing to the law of the land." *United States* v. *Barrett,* 187 Fed. 378, 380.

And in the latter Judge Jones, who presided over the court which considered that contempt had been committed against it by virtue of an assault on Commissioner Randolph as the result of the discharge of his official duties beyond the presence of the court, said:

"As courts can exercise judicial functions only through their judicial officers, and assault upon a judicial officer because he has discharged a judicial duty is necessarily an attack upon the court, for what it has done in the administration of justice.

"It is vital to the welfare of society that courts which pass upon the life, liberty, and property of the citizen be free to exercise their reason and conscience unawed by fear or violence; and the highest consideration of the public good demand that the court protect their officers against revenges induced in consequence of the performance of their duties, as well as violence while engaged in the actual discharge of duty.

"It is a high contempt of court to seek to punish a judicial officer for his official acts, elsewhere than before a constituted tribunal of impeachment, and the offense culminates in its malignity toward the court when its officer is assaulted for judicial acts by one who has been arraigned before him.

"An assault upon a United States commissioner because of past discharge of duty is a contempt of the authority of the court, whose officer the commissioner is, in the administration of criminal laws, although no proceeding against the offender was then pending, and the commissioner was not at the time in the performance of any duty.

"It is said that punishment, as for a contempt, of an assault upon the officer because of part discharge of duty, is inconsistent with the spirit of our institutions; that such an assault is nothing more than an assault upon a private person, and can only be dealt

with as such; that punishment under the contempt power of the court of such an offense invests the person of the judge with privileges at war with the spirit of equality between citizens which our form of government maintains; and that it is, therefore, without the power of the courts in this country to treat any assault upon the officer, no matter what the motive, when he is not actually engaged in the discharge of any duty, as a contempt of court. The necessities of government require, in many instances, that a difference be made between public servants and private citizens. For instance, it is for the public good that a representative shall not be questioned, elsewhere than in the house of which he is a member, for words spoken in debate. Such a privilege is the prerogative of the whole people; but it can only be made effective by giving protection to the individual who represents them, when it would not be accorded under like circumstances if he were acting in a mere private capacity. So it is of many statutory and constitutional privileges which are created for the public good, and not for the sake of the individuals who hold official positions. An assault upon a judicial officer which grows out of official conduct necessarily differs from an assault upon a private individual about a private matter. The consequences to society are not the same. One affects the administration of justice. The other does not. The motive of the assault, under every system of laws, determines the gravity of the offense. An assault upon one who is a judge, about a matter disconnected from his official duties, is not of concern to the court, for it does not affect the administration of justice, and does not differ in any wise or in any degree, in its legal aspects, at least, from an assault upon any other individual. It would be a bald usurpation of authority for the court to attempt to pervert the contempt power to punshing an act which in no way concerns the administration of justice. The case here grows out of an assault upon a judicial officer because of past discharge of duty, —a thing which gravely affects the administration of justice. Justification of punishment in such a case, as for a contempt, is found in the consideration that an assault upon a judicial officer for such a reason attacks the great prerogative of the people, to have and enforce the fearless administration of justice." *Ex Parte McLeod,* 120 F. 130.

By reason of the foregoing, *Enrique Castro Martínez is found guilty of contempt of this Court and sentenced to suffer fifteen days of imprisonment in the District Jail of San Juan situated in this city of San Juan and to pay a fine*

*of fifty dollars and the costs, and he must suffer a day in jail for each dollar of the fine which he fails to pay except that the subsidiary imprisonment shall extend at the most to fifteen days, and a writ for the execution of this judgment in accordance with the law must be issued.*

The Court so held and ordered and the Chief Justice signed. Mr. Justice Wolf concurs in the result. Mr. Justice Córdova Dávila took no part in the decision of this case.